UNITED STATES DISTRICT COURT

DISTRICT OF MARYLAND

AMENDED COMPLAINT

Robert S. Keyser : Case Action No.: 21CV1261-GLR

Plaintiff

V.

Brandon Scott, Mayor of Baltimore City; City Counsel of Baltimore; Marilyn Moseby, Baltimore City States Attorney; Casey Brinks, Assistant States Attorney; Michael S. Harrison, Police Commissioner of the Baltimore City Police Department; Mujahid Tahir, Baltimore City Police Officer (BCPO); Daniel Belen, Baltimore City Police Officer (BCPO); Jashua Stackhouse, BCPO; Cristian Valencia, BCPO; Dezambo, Baltimore City Detective; and the Baltimore City Police Department.

Defendants

*****************************************************************

## AMENDED COMPLAINT

Comes now Plaintiff, Robert Keyser, pro se, in proper person, and alleges in this Amended Complaint:

1. This action is brought pursuant to statute, 42 U.S.C.A. § 1983, to enforce the provisions of the United States Constitution, and civil rights therein, namely, the 2nd Amendment, the 4th Amendment, the 8th Amendment, and the 14th Amendment; and it is further that the above civil rights were violated by The Baltimore City Police Department (BCPD); Further, damages and injuries include Malicious Prosecution, False Arrest, and Police Brutality.

2. All conditions precedent to the filing of this suit have been satisfied.

### JURISTDICTION AND VENUE

3. The above-named Court has Jurisdiction of this action, is proper in the United States District Court for the District of Maryland, pursuant to "Civil Rights" violations of the

UNITED STATES CONSTITUTION, brought Forth against Plaintiff by the Baltimore City Police Department ("BCPD");

4. this amended civil action is suitable and proper to be heard in the United States District Court, of Baltimore Maryland; at 101 West Lombard Street, Baltimore, Maryland 21201, because Defendant's and their agents are in this judicial district and all or a substantial part of the acts or omissions giving rise to this cause of action took place in this judicial district.

## PARTIES

5. Robert Keyser is the Plaintiff; and is now and further mentioned in this complaint as "Plaintiff"; and resides in single family home located at 72 Mellor Ave., Baltimore, Maryland 21228.

6. Brandon Scott, Mayor of Baltimore City; City Counsel of Baltimore; Marilyn Moseby, Baltimore City States Attorney; Casey Brinks, Assistant States Attorney; Michael S. Harrison, Police Commissioner of the Baltimore City Police Department; Mujahid Tahir, BCPO; Daniel Belen, BCPO; Jashua Stackhouse, BCPO; Cristian Valencia, BCPO; Dezambo, BCD; and the Baltimore City Police Department. Collectively referred to as "Defendants" Defendants.

## SERVICE ON DEFENDANTS

7. Plaintiff can serve Defendant by certified mail, restricted delivery through the United States Postal Service, and sending a copy of the complaint and a summons to Lisa Walden, Esq., Chief of the Office of Legal Affairs, 100 North Holliday Street, Suite 101, Baltimore, Maryland 21202.

## STATEMENT OF FACTS

8. Defendant's agents of BCPD illegally searched and seized property from Plaintiff's vehicle, falsely Imprisoned him, and brutalized him during an illegal arrest. In doing so, the BCPD injured Plaintiff's right shoulder, defamed his good name and reputation, hindered his career, lowered his credit score, and violated his constitutional rights of the second, fourth, eighth, and 14th, amendments of the United States Constitution.

9. On, or about, June 15, 2019, at approximately, 11:39 P.M., Plaintiff was ordered by an officer of the BCPD "pop your trunk." Plaintiff was not asked to pop his trunk, he was ordered to do so; nor did he give the officer consent to search and seize his property from his trunk. Plaintiff popped his trunk as commanded by the Officer of the BCPD, because he feared the officer. Without Plaintiff's consent, or permission, the officer of the BCPD searched Plaintiff's trunk and living compartment of his vehicle and forcibly seized Plaintiff's personal property from his vehicle, an unloaded shotgun from the trunk, and a baseball bat from the living compartment. After the officer of the BCPD seized Plaintiff's property, he was ordered out of his vehicle and placed in handcuffs, without an explanation, or why he was being arrested. Later, Plaintiff found out that BCPD Officer Tahir, arrested Plaintiff for aggravated assault because said his superior, Sargent Reed, told him to do so.

10. Violations of Plaintiff's civil rights, police brutality, and false arrest took place in the 400 block of Font Hill Avenue, Baltimore, Maryland 21223.

11. Plaintiff was at Font Hill Avenue to call on officer Tahir of the BCPD. Plaintiff wanted the BCPD to help him get his phone from Miss Kimberly Hall. She admitted stealing Plaintiff's cell phone hours earlier.

12. Plaintiff informed officer Tahir that Miss Hall had outstanding arrest warrants and she was taken into custody by officers of the BCPD. Hours later, an agent for Defendant, BCPD, Detective Dezambo, conducted interviews of Miss Hall, a convicted prostitute and fugitive, and her phone steeling accomplice, Mr. Coung Nguyen, a felonious sex offender on Tier III of the Sex Offender's Registry. Together, Miss Hall, and Mr. Nguyen, concocted a story of false allegations against Plaintiff that resulted in changing Plaintiff's initial charge of Aggravated Assault; and without any investigation or questioning of the Plaintiff, Defendant's agents charged him with the following crimes:

   a. Kidnapping;

   b. Assault-First Degree;

   c. Assault-Second Degree;

   d. False Imprisonment;

   e. Firearm use/Felony-Violent Crime; and

   f. Firearm Over 14" Barrel.

13. On, or about, June 6, 2019, the State of Maryland denied Plaintiff bail. Even though he had no criminal record and is a healthcare professional.

14. On, or about, July 11, 2019, the State of Maryland, once again denied Plaintiff bail, and indicted him with 4 felonies and 2 misdemeanors as mentioned above. Plaintiff was charged with these crimes solely on the words of Miss Hall, a fugitive, a self-proclaimed prostitute, and a drug addict; and Mr. Coung Nguyen, a convicted felon on probation for sex offenses.

15. Plaintiff was alone in his vehicle when he called on Officer Tahir. Miss Hall was in Mr. Nguyen's vehicle. Plaintiff was never asked by any agent of Defendant if his vehicle

could be searched, and Plaintiff never gave Officer Tahir or any agents of the Defendant permission to search and seize property from his vehicle. Furthermore, Plaintiff was never served with a search warrant, read his Miranda rights, or formally interviewed, or interrogated by Detective Dezambo or any Detective(s) of the Defendant.

16. Detective Dezambo was on duty during the time of Plaintiff's arrest. Detective Dezambo's job is to investigate serious crimes in the district where Plaintiff's alleged crimes took place; however, Officer Tahir arrested Plaintiff, drafted the arresting report, and submitted the firearm into evidence. No Detective of Defendant performed a followed-up investigation for these profoundly serious charges, that carried over eighty years of jail-time upon conviction.

17. At the time of his arrest, Plaintiff, had no criminal record, and he never had one until he was illegally searched, brutally arrested, falsely imprisoned, and maliciously prosecuted for these crimes he did not commit.

18. Plaintiff's actions did not warrant a search and seizer of his vehicle and property because he was alone in his vehicle when he came contacted BCPD Officer Tahir and other officers. Miss Hall was not in Plaintiff's vehicle; she was in the vehicle of a convicted felon. How could Officers and detectives of BCPD, and Defendant, conclude that Plaintiff Kidnaped and Assaulted Miss Hall when he was alone in his vehicle. Mere claims from known criminals do not warrant probable cause; and it is further that Plaintiff summoned Officer Tahir, because Miss Hall stole his cell phone and he wanted it back. Officers and detectives of BCPD and Defendant failed to check the Citi-watch cameras that were placed in the areas where Miss Hall alleged, she was accosted by the Plaintiff. If Officers, detectives, of the BCPD and, or, Defendant, had performed a minimal investigation, viewed the footage from the Citi-Watch camera's, probable cause would have been ruled out; and the Plaintiff would not have been arrested because

Miss Hall's allegations would have been found to be false. Officers and detectives of the BCPD knew that Miss Hall was not in Plaintiff's vehicle so probable cause was nonexistent.

19. Defendant's agent searched the Plaintiff's locked trunk and living compartment of his vehicle because of false statements. Defendant's agents could have gotten definitive proof by viewing the footage from the Citi-Watch cameras. Many of them were in the locations where the alleged crimes took place. For example, the following addresses are locations of Citi watch that were not reviewed by agents, detectives, or Defendant.
    a. 1025 South Pulaski Street and Ashton Avenue, Baltimore, Maryland 21223;
    b. 1027 Smallwood Street and Ashton Avenue, Baltimore, Maryland 21223;
    c. 1022 South Pulaski Street and McHenry Street, Baltimore, Maryland 21223; and
    d. 1019 South Payson Street and McHenry Street, Baltimore, Maryland 21223.

20. Footage from several other Citi-watch cameras in this area would also have proved Plaintiff's innocence. For example, the Citi-Watch Camera at the 2000 block of McHenry Street. Viewing footage should have been part of Defendant's investigation. It would have led BCPD Officers, detectives, and, or, other investigators, to the conclusion that the Plaintiff was innocent of the crimes. They would have gained definitive proof that Miss Hall and Mr. Nguyen were falsely accusing Plaintiff of the alleged crimes.

21. Plaintiff was not afforded the same benefits of legal rights that Miss Hall and Mr. Nguyen were privileged with. This is violation Plaintiff's civil rights and a miscarriage of justice.

22. Plaintiff's attorney, Public Defender, Lina Ziet, requested the Citi watch footage from Defendant's agents; however, they claimed it was not available because of time

restraints. In the name of Justice, this footage should have been reviewed and preserved in a timely manner, The mere word of criminals is hardly justified probable cause and charging a person with prison terms of over eighty years of incarceration. Justice demands that all of evidence, clues, Leeds, and suspects, be reviewed, questioned, interrogated, and investigated.

23. Public privacy and civil rights depend on probable cause to be effective; and it protects Citizens of the United States from being falsely arrested, imprisoned, violated, and brutalized by mere words; especially words of known criminals.

24. Plaintiff is the one who summoned Officer Tahir, in the 400 block of Font Hill Avenue, Baltimore, Maryland 21223; however, Defendant's agent never investigated the words of the Plaintiff. Therefore, the words of Miss Hall and Mr. Nguyen should not have been given the credit that law abiding citizens are afforded.

25. Plaintiff was legally transporting his firearm for the purpose of target practice. Just like he told Officers of the Defendant. Therefore, his 4th and 2nd Amendment Rights of the United States Constitution were violated.

26. Defendant's agents declined to return Plaintiff's firearm when he got home from prison, further violating his 2nd amendment right of the United States Constitution.

27. Plaintiff was maliciously prosecuted with 4 felonies and 2 misdemeanors, held without bail for 164 days, brutalized during his arrest to the point that he required hospitalization and treatment, his good name, credit, and reputation were damaged beyond repair.

28. Defendants did not proceed against Plaintiff in the interest of justice. They proceeded to harm the Plaintiff. Justice is not served when a fugitive and a felon lie to the police, and cause law enforcement to file false criminal charges against a professional therapist who helps people for a living.

29. She is not a creditable witness, and she has been found guilty numerous times for crimes of maleficence.

30. On, or about, June 18, 2019, Plaintiff was to begin working at Mercy Medical Center, a hospital where he previously worked for 2 years. Because Defendant-2 refused to release Plaintiff, or give him bail, he lost this well-paying job of $37.00 per hour; and because these charges developed into an adverse criminal record for the Plaintiff, he is not able to obtain employment as an Occupational Therapy Assistant, or as a CDL Truck Driver; two fields where Plaintiff holds licenses. Therefore, Plaintiff's professional life has been ruined.

31. Before, Plaintiff was taken to the Hospital and Central Booking, he questioned several of the BCPD officers, asking them why they were not letting him tell his side of the story? Plaintiff saw Detective Dezambo, one time in the front desk area of the Southwest Police station on, or about, 0100 hours, June 16th, 2019. Detective Dezambo, looked at Plaintiff and asked the officers at the desk while pointing at the Plaintiff "is he still going to the hospital?" One of the Officer's at the front desk said "yes." Detective Dezambo said he would not interview Plaintiff because he was going to the hospital. Plaintiff required medical attention and he was not questioned by Detective Dezambo, or any other Detectives of the Defendants. Therefore, BCPD retaliated against plaintiff because he got the necessary medical attention he required. Another, injustice.

32. And it is further, a couple of days after the plaintiff was released from the Jessup Correctional Institute, he called the arresting officer, Officer Tahir and requested the return of his shotgun; he knew that only the arresting officer could return the shotgun to him; however, the arresting officer, Officer Tahir, referred the Plaintiff to his supervisor. When the Plaintiff called Officer Tahir's supervisor, he was, without provocation, very belligerent to the Plaintiff and said, in a spiteful tone, "I ordered Officer Tahir not to return your shotgun to you." Further, violating the Plaintiff's Constitutional Rights of the 2nd and 4th Amendments.

33. Plaintiff was eager to have his day in court. He believed that he could easily beat the charges against him because they were all fabricated from the minds of careless jurists who do not care about Justice, nor are they concerned with the innocent and people who walk the righteous path. Regarding this injustice, Defendant's agents championed dishonest people and self-proclaimed, drug addicted prostitutes and sex offenders, one of which stole the Plaintiff's cell phone.

34. The Plaintiff's Public Defender, Miss Ziet, counseled him to take the prosecutor's offer and avoid risking felony convictions by way of trial. The Plaintiff followed the advice from his attorney, which was the following: Pled guilty to Carrying a firearm over 14", and the prosecutor will recommend Probation before Judgement (PBJ) and unsupervised probation on the PBJ.

35. On, or about, December 4, 2020, The Honorable Judge, Melissa Phinn, found Plaintiff guilty for **CARRYING A FIREARM OVER 14"**, in the Circuit Court of Maryland, at 100 North Calvert Street, Baltimore, Maryland 21202. The Honorable Judge struck the conviction and gave the Plaintiff PBJ and 1 day of unsupervised probation. The

maximum amount of incarceration for violating this law is 60-days in jail; however, the Plaintiff served 163-days in jail, for a crime he did not commit.

36. According to "Article 19, Baltimore city Legislative reference, 2021." The penalty for **CARRYING FIREARM WITH BARREL OVER 14"** is a minor offense and "any violation of the provision of this section shall be deemed a misdemeanor, subject upon conviction to a fine of not more than $500 or to imprisonment for not longer than 60 days or to both fine and imprisonment, in the discretion of the court. (City Code, 1976/83, art. 19, §97.) (Ord. 80-154; Ord. 81-215.).

37. Officer Mujahid Tahir confiscated Plaintiff's 12-gauge Remington shotgun that he legally purchased, and it was legally registered to him. Furthermore, when officer Tahir confiscated Plaintiff's riffle, he was transporting it for the purpose of target practice; this was the first time since he purchased the gun that he was going to shoot it. Furthermore, the baseball bat that was in his car belonged to his grandson. Plaintiff's grandson left his bat in Plaintiff's vehicle after he took him home from his baseball game. Defendant's agents Plaintiff out to be a criminal, instead of a baseball fan of his grandson. Another, miscarriage of justice.

38. Plaintiff was transporting the shotgun in the manner that Dicks Sporting Goods told him to transport it home, after purchased it. The riffle was unloaded and locked in the trunk of his car. Therefore, Plaintiff submits that he was wrongfully arrested, and officer Tahir had no reason for confiscating the riffle.

39. Plaintiff lost two, well-paying jobs, because of these violations of his constitutional rights, jail time, and the adverse criminal record that damaged his good name.

Employers, National Staffing, and TMC Transportation withdrew job offers because of this miscarriage of justice.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Jury and the honorable court order Defendant to pay the Plaintiff for the damages he suffered. Plaintiff submits are the following:

a. According to Governor Larry Hogan and Rachel Kesselman, Punitive damages for false imprisonment are calculated at $50.00 per day. Plaintiff was imprisoned for 163-days, that equals $8,150;

b. Because of these false accusations, Plaintiff's fiancé decided not to have further relations with him and returned his 2-karat diamond and gold engagement ring, his cost $4,000. The Ring was stolen from his home while he was incarcerated and the house was vacant. Homeowner's insurance policy does not cover jewelry, it must be itemized. Plaintiff could not Itemize the ring because he could not call his Insurance Company from prison.

c. Plaintiff's house was burglarized while he was incarcerated and his home was vacant. Insurance deductible $1,000;

d. Plaintiff lost a job with National Staffing agency that was going to compensate him at the rate of $37.00 per hour. 40 hours per week = $1,480 per week at 4.2 weeks per Month = 6,216 per month x 12 months = $74,592 per year before taxes. $55,944 after taxes x 3 years= $167,832;

e. TMC Transportation was going to compensate him at an average of $1,500 per week. X 4.2 weeks per month= $6,300 per month, X 12 months= 75,600 per year before tax, $56.700 after tax, x 3 years = 170,100;

f. Baseball bat = $30;

g. Because Plaintiff was held at Jessup Correctional Institute (JCI) a very scary place to be. Full of hardened criminals and murderers. 163-days at this institution and having his life threatened many times, caused Plaintiff to be stricken and diagnosed with Post Traumatic Stress Disorder (PTSD). Because he will suffer

from this disorder for the rest of his life, he is seeking punitive damages equaling: $1,000,000.

h. Because Plaintiff's professional career was damaged beyond repair, because of published lies that were read by prospective employers and professional peers; he is seeking compensation for lost wages from a ruined career, due to Libel and Slander: $400,000;

g. Replacement compensation for Plaintiff's Shotgun equals, $350;

h. Pain and suffering, both mentally and physically: $400,000;

I. Punitive damages for violating Plaintiff's civil rights: $500,000; and

j. Punitive damages according to proof and damage to his credit score: $500,000;

**WHEREFORE,** Plaintiff prays that a jury find in favor of the Plaintiff and a Judge of this honorable court enter a judgement against the Defendants for the above amount, a through j, totaling: $2,751,112; plus

K. interest as allowed by law;

l. cost of suit; and

M. such other and further relief as the jury and the court may deem just and proper.

Respectfully Submitted,

Robert S. Keyser, Plaintiff,

_____, DATE: June 25, 2021

Robert S. Keyser

72 Mellor Avenue

Baltimore, Maryland 21228

(410)274-7621.