*FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2021 AUG 23 PM 6: 59

CLERK'S OFFICE
AT BALTIMORE

# UNITED STATES DISTRICT COURT

BY _____ *tho* _____ DEPUTY

## IN THE DISTRICT OF MARYLAND

## THIRD AMENDED COMPLAINT

| | | |
|---|---|---|
| **Robert S. Keyser** | : | **Civil Case Action No.:** GLR ~~21-12-16~~ *Error RK* ~~21-1261~~ |
| | | ~~GLR-12-1261~~ *Error RK* |
| **Plaintiff** | : | **Trial by Jury** |
| | | |
| **V** | : | |

**Brandon Scott, Mayor of Baltimore City; Marilyn Mosby, Baltimore City States Attorney; City Counsel of Baltimore City; Casey Brinks, Baltimore City Assistant States Attorney; Michael S. Harrison, Baltimore City Police Commissioner; Mujahid Tahir, Baltimore City Police Officer (BCPO); Joshua Stackhouse, BCPO; Danial Belen, BCPO; Christian Valencia, BCPO; and the Baltimore City Police Department.**

**Defendants**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Comes now, Robert S. Keyser, Pro se, in Proper Person, in this 3rd Amended

Complaint:

1. This action is brought pursuant to statute, 42 U.S.C.A. § 1983, to enforce the provisions of the United States Constitution, and civil rights therein, namely, the 2nd Amendment, the 4th Amendment, the 8th Amendment, and the 14th Amendment; and it is further that the above civil rights were violated by The Baltimore City Police Department BCPD; Caused, damages and injuries including Malicious Prosecution, False Arrest, False Imprisonment, and Police Brutality.

2. All conditions precedent to the filing of this suit have been satisfied.

## JURISTDICTION AND VENUE

3. The above-named Court is proper and has Jurisdiction of this action, is proper in the United States District Court for the District of Maryland, pursuant to "Civil Rights" violations of the UNITED STATES CONSTITUTION, brought Forth against Plaintiff by the Baltimore City Police Department BCPD and their employees.

4. This third amended civil action is suitable and proper to be heard in the United States District Court, of Baltimore Maryland; at 101 West Lombard Street, Baltimore, Maryland 21201, because Defendant's and their agents are in this judicial district and all or a substantial part of the acts or omissions giving rise to this cause of action took place in this judicial district.

## PARTIES

5.  Robert Keyser is the Plaintiff; and is now and further mentioned in this complaint as

    "Plaintiff;" he resides in single family home located at 72 Mellor Ave., Baltimore,

    Maryland 21228.

6.  Brandon Scott, Mayor of Baltimore City; The Baltimore City Counsel of Baltimore;

    Marilyn Moseby, Baltimore City Assistance States Attorney; Casey Brinks, Michael S.

    Harrison, Police Commissioner of the Baltimore City Police Department; Mujahid Tahir,

    BCPO; Daniel Belen, BCPO; Jashua Stackhouse, BCPO; Cristian Valencia, BCPO; and the

    Baltimore City Police Department are collectively referred to as "Defendants"

    Defendants.

## SERVICE ON DEFENDANTS

7.  Plaintiff can serve Defendants by certified mail, restricted delivery through the United

    States Postal Service, and sending a copy of the complaint and a summons to Lisa

    Walden, Esq., Chief of the Office of Legal Affairs, 100 North Holliday Street, Suite 101,

    Baltimore, Maryland 21202; and Office of the State's Attorney for Baltimore City 120

    East Baltimore Street, 9th Floor Baltimore, MD 21202 Phone Number 443-984-6000

    Email Address mail@stattorney.org.

## STATEMENT OF FACTS

8. Officers of the BCPD and - agents of BCPD illegally searched and seized property from Plaintiff's vehicle, falsely imprisoned him, and brutalized him during an illegal arrest. In doing so, the BCPD injured Plaintiff's right shoulder, defamed his good name and reputation, ruined his career, lowered his credit score, and violated his constitutional rights of the second, fourth, eighth, and 14th, amendments of the United States Constitution.

9. On, or about, June 15, 2019, at approximately, 11:39 P.M., Plaintiff was ordered by an officer of the BCPD "pop your trunk." Plaintiff was not asked to pop his trunk; he was ordered to do so; nor did the Plaintiff give the officer consent to search and seize his property from his trunk. Plaintiff popped his trunk as commanded by the Officer of the BCPD, because he feared the officer. Without Plaintiff's consent, or permission, the officer of the BCPD searched Plaintiff's trunk and living compartment of his vehicle and forcibly seized Plaintiff's personal property from his vehicle; namely, an unloaded shotgun from the trunk, and a baseball bat from the living compartment. After the officer of the BCPD seized Plaintiff's property, he was ordered out of his vehicle and placed in handcuffs.

10. These violations of Plaintiff's civil rights, police brutality, and false arrest took place in the 400 block of Font Hill Avenue, Baltimore, Maryland 21223.

11. Plaintiff was at Font Hill Avenue to call on officer Tahir of the BCPD. Plaintiff wanted the
BCPD to help him get his phone from an acquaintance of his, Miss Kimberly Hall. Miss
Hall is an acquaintance of the Plaintiff and She admitted stealing Plaintiff's cell phone 1
Month earlier.

12. Plaintiff informed officer Tahir that Miss Hall knows Plaintiff, has been to his home
several times and has held the Remington 21 gauge shot gun many times at his house.
CPD, Detective Dezambo, conducted an interview of Miss Hall, and another interview on
Mr. Coung Nguyen. Together, Miss Hall, and Mr. Nguyen, concocted a story of false
allegations against Plaintiff that resulted in changing Plaintiff's initial charge of
Aggravated Assault; and without any investigation or questioning of the Plaintiff,
Defendant's agents charged him with the following crimes:

   a. Kidnapping;

   b. Assault-First Degree;

   c. Assault-Second Degree;

   d. False Imprisonment;

   e. Firearm use/Felony-Violent Crime; and

   f. Firearm Over 14" Barr

13. Plaintiff was alone in his vehicle when he called on Officer Tahir. Miss Hall was in Mr. Nguyen's vehicle. Plaintiff was never asked by any agent of Defendant if his vehicle could be searched, and Plaintiff never gave Officer Tahir or any agents of the Defendant permission to search and seize property from his vehicle. Furthermore, Plaintiff was never served with a search warrant, or formally interviewed, or investigated by any detectives of the BCPD.

14. Detective Dezambo was on duty during the time of Plaintiff's arrest. It was Detective Dezambo's job investigate serious crimes in the district where Plaintiff was accused of committing serious crimes; however, Officer Tahir arrested Plaintiff, drafted the arresting report, and submitted the firearm into evidence. In short

   No Detective of Defendant performed a followed-up investigation for these profoundly serious charges, that carried decades of jail-time upon conviction.

15. Even though, At the time of his arrest, Plaintiff, had no criminal record, and he never had one until he was illegally searched, brutally arrested, falsely imprisoned, and maliciously prosecuted for these crimes he did not commit.

16. Plaintiff's actions did not warrant a search of his vehicle and seizing his property because he was alone in his vehicle when he came contacted BCPD Officer Tahir and

other officers. Miss Hall was not in Plaintiff's vehicle; she was in the vehicle of a

convicted felon. How could officers of BCPD, and Defendants, conclude that Plaintiff

Kidnaped and Assaulted Miss Hall when he was alone in his vehicle. Mere claims from

known criminals do not warrant probable cause; and it is further that Plaintiff

summoned officer Tahir, because Miss Hall stole his cell phone and he wanted it back.

Officers and detectives of BCPD and Defendants failed to check the Citi-watch cameras

that were placed in the areas where Miss Hall alleged, she was accosted by the Plaintiff.

If Officers, or detectives, of the BCPD had performed a minimal investigation and viewed

the footage from the Citi-Watch camera's, Plaintiff would not have been arrested

because Miss Hall's allegations would have been found to be false. Officers and

detectives of the BCPD knew that Miss Hall was not in Plaintiff's vehicle so probable

cause was nonexistent.

17.  Defendant's agents searched the Plaintiff's locked trunk and living compartment of his

vehicle because of false statements. Defendant's agents could have gotten definitive

proof by viewing the footage from the Citi-Watch cameras. Many of them were in the

locations where the alleged crimes took place. For example, the following addresses are

locations of Citi watch that were not reviewed by agents, detectives, or Defendant.

a.  1025 South Pulaski Street and Ashton Avenue, Baltimore, Maryland 21223;

b.  1027 Smallwood Street and Ashton Avenue, Baltimore, Maryland 21223;

c.  1022 South Pulaski Street and McHenry Street, Baltimore, Maryland 21223; and

d.  1019 South Payson Street and McHenry Street, Baltimore, Maryland 21223.

18. Footage from several other Citi-watch cameras in this area would also have proved
Plaintiff's innocence. For example, the Citi-Watch Camera at the 2000 block of McHenry
Street. Viewing footage should have been part of Defendant's investigation. It would
have led BCPD Officers, detectives, and, or` other Baltimore City Officials to the
conclusion that the Plaintiff was innocent of the crimes for which he was charged. They
would have gained definitive proof that Miss Hall and Mr. Nguyen were falsely accusing
Plaintiff of the alleged crimes.

19. Plaintiff was not afforded the same benefits of legal rights that Miss Hall and Mr.
Nguyen were privileged with.  This is violation Plaintiff's civil rights and a miscarrlage of
justice.

20. Plaintiff's attorney, Public Defender, Linda Ziet, informed him that Defendants never
attempted to obtain or review footage from Citi watch cameras located in the areas
where Miss Hall claimed she was accosted. Because of time restraints footage from
these cameras are not available. In the name of Justice, this footage should have been
reviewed and preserved in a timely manner. The mere words of criminals do not
constitute probable cause and charging a person with crimes that carry decades of
prison time. All the evidence should have been reviewed to justify the charges.

21. Public privacy and civil rights depend on probable cause to be effective; and it protects citizens of the United States from being falsely arrested, imprisoned, violated, and brutalized.

22. Plaintiff is the one who summoned Officer Tahir, in the 400 block of Font Hill Avenue, Baltimore, Maryland 21223; however, Defendant's agents never investigated the words of the Plaintiff. Therefore, the words of Miss Hall and Mr. Nguyen should not have been given credit.

23. Plaintiff was legally transporting his firearm for the purpose of target practice. Just like he told Officers of the Defendants. Therefore, his 4th and 2nd Amendment Rights of the United States Constitution were violated.

24. Defendant's agents declined to return Plaintiff's firearm when he got home from prison, further violating his 2nd amendment right of the United States Constitution.

25. Plaintiff was maliciously prosecuted with 4 felonies and 2 misdemeanors, held without bail for 164 days, brutalized during his arrest to the point that he required

hospitalization and treatment, his good name, credit, and reputation were damaged beyond repair.

26. Defendants did not proceed against Plaintiff in the interest of justice.  They proceeded to harm the Plaintiff. Justice is not served when a fugitive's and a felon's credibility supersede the credibility of a law-abiding citizen who helps people for a living.

27.  Miss Hall and Mr. Nguyen are not a creditable witness because of her and his convictions of maleficence.

28. On, or about, June 18, 2019, Plaintiff was to begin working at Mercy Medical Center, a hospital where he previously worked for 2 years. Because Defendants charged Plaintiff with four felonies that involved a firearm, he did not qualify for bail. Subsequently,  he lost this well-paying job of $37.00 per hour; and because these charges developed into an adverse criminal record for the Plaintiff, he is not able to obtain employment as an Occupational Therapy Assistant, or as a CDL Truck Driver; two fields where Plaintiff holds licenses. Therefore, Plaintiff's professional life has been ruined.

29.  Before, Plaintiff was taken to the Hospital and Central Booking, he questioned several of the BCPD officers, asking them why they were not letting him tell his side of the

story? Plaintiff saw Detective Dezambo, one time in the front desk area of the

Southwest Police station on, or about, 0100 hours, June 16th, 2019. Detective Dezambo,

looked at Plaintiff and asked the officers at the desk while pointing at the Plaintiff "is he

still going to the hospital?" One of the Officer's at the front desk said "yes." Detective

Dezambo said he would not interview Plaintiff because he was going to the hospital.

Plaintiff required medical attention and he was not questioned by Detective Dezambo,

or any other Detectives of the Defendants. Therefore, BCPD retaliated against plaintiff

because he got the necessary medical attention he required. Another, injustice.


30. And it is further, a couple of days after the plaintiff was released from the Jessup

Correctional Institute, he called the arresting officer, Officer Tahir and requested the

return of his shotgun; he knew that only the arresting officer could return the shotgun

to him; however, the arresting officer, Officer Tahir, referred the Plaintiff to his

supervisor. When the Plaintiff called Officer Tahir's supervisor, he was, without

provocation, very belligerent to the Plaintiff and said, in a spiteful tone, "I ordered

Officer Tahir not to return your shotgun to you." Further, violating the Plaintiff's

Constitutional Rights.


31. Plaintiff was eager to have his day in court. He believed that he could easily beat the

charges against him because they were all fabricated from the minds of careless jurists

who do not care about Justice, nor are they concerned with the innocent and people

who walk the righteous path. Regarding this injustice, Defendant's agents championed a

prostitute and a sex offender, one of which stole the Plaintiff's cell phone.


32. The Plaintiff's Public Defender, Miss Ziet, counseled him to take the prosecutor's offer

and avoid risking felony convictions by way of trial. The Plaintiff followed the advice

from his attorney, which was the following: Pled guilty to Carrying a firearm over 14",

and the prosecutor will recommend Probation before Judgement (PBJ) and

unsupervised probation on the PBJ.


33. On, or about, December 4, 2020, The Honorable Judge, Melissa Phinn, found Plaintiff

guilty of **CARRYING A FIREARM OVER 14"**, in the Circuit Court of Maryland, at 100 North

Calvert Street, Baltimore, Maryland 21202. The Honorable Judge struck the conviction

and gave the Plaintiff PBJ and 1 day of unsupervised probation. The maximum amount

of incarceration for violating this law is 60-days in jail; however, the Plaintiff served 163-

days in jail, for a crime he did not commit.


34. According to "Article 19, Baltimore city Legislative reference, 2021." The penalty for

**CARRYING FIREARM WITH BARREL OVER 14"** is a minor offense and "any violation of

the provision of this section shall be deemed a misdemeanor, subject upon conviction to

a fine of not more than $500 or to imprisonment for not longer than 60 days or to both

fine and imprisonment, in the discretion of the court. (City Code, 1976/83, art. 19, §97.) (Ord. 80-154; Ord. 81-215.).

35. Officer Mujahid Tahir confiscated Plaintiff's 12-gauge Remington shotgun that he legally purchased, and it was legally registered to him. Furthermore, when officer Tahir confiscated Plaintiff's riffle, he was transporting it for the purpose of target practice; this was the first time since he purchased the gun that he was going to shoot it. Furthermore, the baseball bat that was in his car belonged to his grandson. Plaintiff's grandson left his bat in Plaintiff's vehicle after he took him home from his baseball game. Defendant's agents Plaintiff out to be a criminal, instead of a baseball fan of his grandson. Another, injustice.

36. Plaintiff was transporting the shotgun in the manner that Dicks Sporting Goods told him to transport it home, after purchased it. The riffle was unloaded and locked in the trunk of his car. Therefore, Plaintiff submits that he was wrongfully arrested, and officer Tahir had no reason for confiscating the riffle.

37. Plaintiff lost two, well-paying jobs, because of these violations of his constitutional rights, jail time, and the adverse criminal record that damaged his good name.

Employers, Multi-specialty healthcare, and TMC Transportation, withdrew job offers because of this injustice.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff prays that the Jury and the honorable court order Defendant to pay the Plaintiff for the damages he suffered. Plaintiff submits are the following:

a.  According to Governor Larry Hogan and Rachel Kesselman, Punitive damages for false imprisonment are calculated at $50.00 per day. Plaintiff was imprisoned for 163-days, that equals $8,150;

b.  Plaintiff's house was burglarized while he was incarcerated, and his home was vacant. Insurance deductible $1,000;

c.  Plaintiff lost a job with Multi-Specialty Healthcare, that was going to compensate him at the rate of $37.00 per hour. 40 hours per week = $1,480 per week at 4.2 weeks per Month = 6,216 per month x 12 months = $74,592 per year before taxes. $55,944 after taxes x 3 years= $167,832;

d.  TMC Transportation was going to compensate him at an average of $1,500 per week. X 4.2 weeks per month= $6,300 per month, X 12 months= 75,600 per year before tax, $56.700 after tax, x 3 years = 170,100;

e.  Baseball bat = $30;

f.  Because Plaintiff was held at Jessup Correctional Institute (JCI) a very scary place to be. Full of hardened criminals and murderers. 163-days at this institution and having his life threatened many times, caused Plaintiff to be stricken and diagnosed with Post

Traumatic Stress Disorder (PTSD). Because he will suffer from this disorder for the rest of his life, he is seeking punitive damages equaling: $1,000,000.

g. Because Plaintiff's professional career was damaged beyond repair, because of published lies that were read by prospective employers and professional peers; he is seeking compensation for lost wages from a ruined career, due to Libel and Slander: $400,000;

> g. Replacement compensation for Plaintiff's Shotgun equals, $350;
>
> h. Pain and suffering, both mentally and physically: $400,000;
>
> I. Punitive damages for violating Plaintiff's civil rights: $500,000; and
>
> j. Punitive damages according to proof and damage to his credit score: $500,000;

**WHEREFORE,** Plaintiff prays that a jury find in favor of the Plaintiff and a Judge of this honorable court enter a judgement against the Defendants for the above amount, a through j, totaling: $2,747,112; plus:

> K. interest as allowed by law;
>
> l. cost of suit; and
>
> M. such other and further relief as the jury and the court may deem just and proper.

Respectfully Submitted,

Robert S. Keyser, Plaintiff,

_____, DATE: _8-23-21_

Robert S. Keyser

72 Mellor Avenue

Baltimore, Maryland 21228

(410) 274-7621.